**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NASRIN SARLAK, *et al.*, | |
| Plaintiffs, | Civil Action No. 20-35 (BAH) |
| v. | Chief Judge Beryl A. Howell |
| MICHAEL R. POMPEO, in his official capacity as Secretary of State, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

Plaintiff Nasrin Sarlak, a citizen of Iran, applied in November 2017 for a visa allowing her to immigrate to the United States to work as a pastry chef for plaintiff Simply Natural of Sunrise, Inc. ("Simply Natural"). *See* Compl. ¶¶ 13, 16, ECF No. 1.  Plaintiffs Masoud Abdoli ("Abdoli"), Sarlak's husband, and Arshia Abdoli ("Arshia"), Sarlak's son, also citizens of Iran, simultaneously sought visas to immigrate to the United States based on their familial relationship with Sarlak. *See id.* ¶ 17.  By January 2020, Sarlak, Abdoli, and Arshia had not yet received final decisions, and plaintiffs filed this suit seeking a writ of mandamus or an order under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.*, compelling unreasonably delayed agency action. *See* Compl. ¶ 41; *id.* at 13–14 (Prayer for Relief).  Defendants have filed a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, for failure to state a claim under Rule 12(b)(6). *See* Mot. to Dismiss, ECF No. 8; *see also* Mem. Supp. Defs.' Mot. to Dismiss ("Defs.' Mem."), ECF 8.  For the reasons explained below, defendants' motion is granted.

**I.     BACKGROUND**

Simply Natural filed, on August 21, 2017, an I-140 Immigration Petition for Alien Worker for Sarlak to work in the "highly specialized position" of "pastry chef, specifically focused on inventing recipes for and actually baking healthy Persian baked goods." Compl. ¶ 13. U.S. Citizenship and Immigration Service approved the petition on October 19, 2017 and forwarded the petition to the Department of State National Visa Center. *Id.* ¶ 14. Soon after, Sarlak, Abdoli, and Arshia completed additional aspects of the visa application, provided supporting documents, and paid their visa processing fees. *Id.* ¶¶ 16–18.

On May 17, 2018, Sarlak, Abdoli, and Arshia appeared for a visa interview at the U.S. Embassy in Ankara, Turkey. *Id.* ¶¶ 20, 34. That same day, "the consular officer refused the immigrant visa applications in accordance with Presidential Proclamation 9645," Decl. of Chloe Dybdahl, Attorney Adviser, Advisory Opinions Division of the U.S. Department of State's Bureau of Consular Affairs ("Dybdahl Decl.") ¶ 4, ECF No. 8-1, which generally bars nationals from Iran and several other countries from entering the United States, *see* Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or Other Public-Safety Threats, 82 Fed. Reg. 45161, 45163 (Sept. 24, 2017) ("Proclamation").[1]

The complaint alleges that Sarlak, Abdoli, and Arshia were then immediately considered for waivers under the Proclamation. *See* Compl. ¶¶ 21, 23. The Proclamation permits "a consular officer," in his "discretion, [to] grant waivers on a case-by-case basis to permit the entry of foreign nationals for whom entry is otherwise suspended or limited." Proclamation, 82 Fed. Reg. at 45168. "A waiver may be granted only if a foreign national demonstrates to the consular

---

[1]     As explained further below, this declaration, which is outside the complaint's four corners, may be considered on the motion to dismiss for lack of jurisdiction. *See, e.g.*, *Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016) ("[W]e 'may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.'" (quoting *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005))).

2

officer's . . . satisfaction that: (A) denying entry would cause the foreign national undue hardship; (B) entry would not pose a threat to the national security or public safety of the United States; and (C) entry would be in the national interest." *Id.*

On May 29, 2018, "the consular officer made a preliminary determination" about Sarlak: "that the personal hardship and national interest prongs were met." Dybdahl Decl. ¶ 5. The consular officer then "consulted with the Visa Office for interagency review regarding whether Ms. Sarlak's entry could pose a threat to national security or public safety." *Id.* On February 7, 2020, after this suit was filed, Sarlak appeared in Ankara for a second interview, *id.* ¶ 6, and on February 10, 2020, "the consular officer found Ms. Sarlak and Arshia eligible for waivers of the Proclamation's entry restrictions and issued them immigrant visas," *id.* ¶ 7. That same day, the consular section at the U.S. Embassy in Ankara also contacted Abdoli "to request additional documents and information." *Id.*

By the time defendants moved to dismiss this action, on March 30, 2020, Abdoli's "visa application remain[ed] refused under the Proclamation while he is undergoing consideration for a waiver of the Proclamation's entry restrictions." *Id.* ¶ 8. In opposing the motion to dismiss, plaintiffs acknowledged that "Ms. Sarlak's and her son's visa applications have been adjudicated and their visas were issued shortly after their complaint was filed in this Court." Pls.' Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") at 2, ECF No. 9. Plaintiffs agree with defendants that Abdoli has not yet received a decision about his eligibility for a waiver. *Id.* (citing Compl. ¶ 23).

## II.    LEGAL STANDARD

"Federal courts are courts of limited jurisdiction," *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotation marks omitted) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)), and "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto," *Johnson v. Comm'n on*

3

*Presidential Debates*, 869 F.3d 976, 980 (D.C. Cir. 2017) (internal quotation marks omitted) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff thus "bears the burden of invoking the court's subject matter jurisdiction." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

When a jurisdictional argument "present[s] a dispute over the factual basis of the court's subject matter jurisdiction," "the court must go beyond the pleadings and resolve" any dispute necessary to the disposition of the motion to dismiss.  *Feldman v. FDIC*, 879 F.3d 347, 351 (D.C. Cir. 2018) (alteration in original) (internal quotation mark omitted) (quoting *Phoenix Consulting v. Republic of Angl.*, 216 F.3d 36, 40 (D.C. Cir. 2000)).  The court must accept as true "factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  In addition, however, the "court may properly consider . . . evidentiary material in the record," again affording the plaintiff "the benefit of all reasonable inferences." *Feldman*, 879 F.3d at 351.

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir.

2012).  In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. Courts do not, however, "assume the truth of legal conclusions, nor do [they] 'accept inferences that are unsupported by the facts set out in the complaint.'" *Arpaio*, 797 F.3d at 19 (alteration in original) (internal citation omitted) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)).  "In determining whether a complaint fails to state a claim," a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [courts] may take judicial notice." *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997)).

### III.   DISCUSSION

Sarlak and Arshia's visas have been issued.  *See* Dybdahl Decl. ¶ 7; Pls.' Opp'n at 2. Plaintiffs' claims about those two visas will therefore be dismissed as moot.  *See Liu v. INS*, 274 F.3d 533, 536 (D.C. Cir. 2001) (holding that "[a] live controversy has ceased to exist" where plaintiff had been granted a visa).

As to the claims about Abdoli's visa application, defendants argue that this court lacks subject matter jurisdiction under the doctrine of consular nonreviewability, *see* Defs.' Mem. at 7–10, or because waiver determinations under the Proclamation are "committed entirely to the discretion of the executive branch," *id.* at 12.  Even if plaintiffs' claims are reviewable, defendants maintain that the case should be dismissed for failure to state a claim.  *See id.* at 14–16.  For the reasons outlined below, the claims related to Abdoli will be dismissed for failure to state a claim.

A. **The Doctrine of Consular Nonreviewability Does Not Apply to Abdoli's Claim That Action on His Waiver Application Has Been Unreasonably Delayed.**

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.*, "confers upon consular officers exclusive authority to review applications for visas." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999) (citing 8 U.S.C. §§ 1104(a), 1201(a)). "In view of the political nature of visa determinations and of the lack of any statute expressly authorizing judicial review of consular officers' actions, courts have applied what has become known as the doctrine of consular nonreviewability" to visa-application decisions. *Id.* at 1159. "The doctrine holds that a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise." *Id.*; *see also Castaneda-Gonzalez v. INS*, 564 F.2d 417, 428 n.25 (D.C. Cir. 1977) (observing that "a consular officer could make . . . a decision [to deny a visa] without fear of reversal since visa decisions are nonreviewable").

"[T]he doctrine of consular nonreviewability is not triggered," though, "until a consular officer" has rendered a final decision. *Nine Iraqi Allies Under Serious Threat Because of their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 290 (D.D.C. 2016). That is so because "[w]hen the Government simply declines to provide a decision . . ., it is not exercising its prerogative to grant or deny applications but failing to act at all." *Id.* at 290–91. Thus, the doctrine of consular nonreviewability "does not insulate a delay in reaching" final decisions about visas "from judicial review." *Vulupala v. Barr*, No. 19-cv-378 (ABJ), 2020 WL 601887, at *6 (D.D.C. Feb. 7, 2020); *see also, e.g.*, *Patel v. Reno*, 134 F.3d 929, 931–32 (9th Cir. 1998) ("Normally a consular official's discretionary decision to grant or deny a visa petition is not subject to judicial review. However, when the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion, jurisdiction exists." (citations omitted)).

Defendants insist that the doctrine of consular nonreviewability bars judicial review of Abdoli's claims because "the consular officer . . . refused [Abdoli's] visa application[]." Defs.' Mem. at 8.  Yet, decisions from this Court have consistently refused to apply the doctrine of consular nonreviewability in cases just like this one, holding that, where a visa application has been refused under the Proclamation but the applicant remains under consideration for a waiver, the applicant may "seek[] review of the government's failure to adjudicate [his or] her waiver eligibility." *Bagherian v. Pompeo*, No. 19-cv-1049 (JDB), 2020 WL 674778, at *3 (D.D.C. Feb. 11, 2020); *see also Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 113 (D.D.C. 2020) (holding that doctrine of consular nonreviewability did not apply to case alleging unreasonable delay in adjudicating waiver under the Proclamation); *Ghadami v. Dep't of Homeland Sec.*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at *5 (D.D.C. Mar. 19, 2020) (holding that the doctrine of consular nonreviewability did not apply where applicant was "being considered for a waiver" under the Proclamation); *Didban v. Pompeo*, No. 19-cv-881 (CRC), 2020 WL 224517 at *4 (D.D.C. Jan. 15, 2020) (same); *Thomas v. Pompeo*, No. 19-cv-1050 (ESH), 2020 WL 601788, at *4 (D.D.C. Feb. 7, 2020) (same).  In so holding, a distinction has been made between the initial refusal of a visa under the Proclamation and the next step in the process — consideration for a waiver.  *See Bagherian*, 2020 WL 674778, at *3 ("The government contends that the doctrine bars this Court from reviewing the consular officer's decision . . . to refuse [the applicant's] visa application. . . .  True enough.  However, [the applicant] is not seeking review of that decision. . . .  Instead, she seeks review of the government's failure to adjudicate her waiver eligibility[.]").  Thus, even if the initial refusal of the visa is unreviewable under the doctrine of consular nonreviewability, a waiver is still on the table, and absent a final decision on the waiver, the doctrine of consular nonreviewability "does not prevent the Court from considering [a] claim

7

that the Government has unreasonably delayed rendering a decision" on the "waiver application." *Didban*, 2020 WL 224517 at *4.[2]

Like the plaintiffs in these prior cases, Abdoli frames his claim as seeking judicial review not of the initial refusal of the visa under the Proclamation but of the unreasonable delay in rendering a final decision on his eligibility for a waiver. *See* Pls.' Opp'n at 2–4, 8–9. The government's own declaration admits that Abdoli's waiver has not "been finally refused," *P.K. v. Tillerson*, 302 F. Supp. 3d 1, 11 (D.D.C. 2017) (citing government's declaration as evidence), by reporting that "he is undergoing consideration for a waiver" and that "it is not possible to predict how long it will take to . . . further adjudicate the waiver request," Dybdahl Decl. ¶ 8. As long as any "consideration" or "further adjudication" remains to be done, no final decision has been made on Abdoli's waiver and the doctrine of consular nonreviewability cannot be invoked to bar

---

[2] *Ghadami* reached the same conclusion but by reasoning that the waiver application process is part and parcel of the visa application process such that a visa application subject to the Proclamation has not been finally adjudicated until the applicant's waiver eligibility has been determined. *See* 2020 WL 1308376, at *5 (reasoning that "the government's 'refusal'" of the visa under the Proclamation "was an interim decision," and that while the waiver application was still under consideration, "there has been no final decision rendered as to [the applicant's] eligibility for the visa"). Plaintiffs here follow *Ghadami* in framing their argument, insisting that Abdoli's visa application has not "actually been refused" until his waiver is finally adjudicated. *See* Pls.' Opp'n at 2–4.

Since *Ghadami*, however, the Department of State has changed how it displays the status of visa applications like Abdoli's and the one at issue in *Ghadami*. In *Ghadami*, the status of the applicant's visa application was listed as "administrative processing" while the waiver remained under consideration. 2020 WL 1308376, at *5. *Ghadami* relied on that fact, and on case law interpreting the significance of that status, in justifying its ruling. *See id.* The status of Abdoli's visa application, though, is listed as "refused." *See* Pls.' Opp'n, Ex. 1, Immigrant Visa Status, ECF No. 9-1. A Department of State document submitted as an exhibit by plaintiffs explains that "[o]n March 3, 2020, the Department of State made an update to" the website that informs visa applicants of the status of their applications so that "[a] visa applicant whose case previously displayed as being in 'Administrative Processing' on his or her case status page now displays as being 'refused.'" *See* Pls.' Opp'n, Ex. 2, Visas: CEAC Case Status Change, ECF No. 9-2. Thus, the change is ultimately cosmetic, as "[t]here has been no change in such applicants' actual cases." *Id.*

Nevertheless, given that Abdoli's visa is listed as refused but his waiver application remains open, the analytical framework used in *Bagherian*, 2020 WL 674778, at *3, and *Didban*, 2020 WL 224517 at *4, may fit more neatly here. That said, whether the waiver application is considered part of, as in *Ghadami*, or separate from the visa application, as in *Bagherian* and *Didban*, the result is the same: an applicant whose visa has been refused under the Proclamation can challenge an unreasonable delay in consideration of a waiver. *See Moghaddam*, 424 F. Supp. 3d at 113 ("[T]his Court need not consider at this juncture whether the waiver eligibility determination should be considered part of the overall visa adjudication process. . . . [Plaintiffs] primarily seek injunctive relief related to Plaintiff Sharei's waiver eligibility. That they view this as part of the broader visa adjudication process is irrelevant to this argument because Defendants admit that her waiver eligibility has not yet been determined.").

his claims.  *See, e.g.*, *Ghadami*, 2020 WL 1308376, at *5 (holding that the doctrine does not apply where waiver application "remain[ed] suspended"); *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Pompeo*, 18-cv-01388 (TSC), 2019 WL 367841, at *10 (D.D.C. Jan. 30, 2019) (reasoning that the doctrine of consular nonreviewability did not apply where the application was at an "intermediate step").

In the end, defendants concede as much, clarifying in their reply in support of their motion that "State does not assert that the doctrine [of consular nonreviewability] would bar Plaintiffs' claim . . . that State unreasonably delayed adjudicating Mr. Abdoli's application for a waiver" and acknowledging that "[d]istrict courts in this jurisdiction have recognized [a] distinction" between the initial visa refusal under the Proclamation and consideration for a waiver.  Defs.' Reply at 5 (citing *Bhagerian*, 2020 WL 674778, at *3).  Defendants maintain that the doctrine would apply "insofar as Plaintiffs seek a redo of State's refusal of their visa applications," *id.*, but plaintiffs do not seek such reconsideration.

In short, "there has been no final decision rendered as to" Abdoli's "eligibility for" a waiver," and "[t]hus, the doctrine of consular nonreviewability does not bar the Court from considering whether the government has unreasonably delayed issuing [such] a decision." *Ghadami*, 2020 WL 1308376, at *5.[3]

### B. The Alleged Delay in Rendering a Decision on Abdoli's Waiver Is Not Unreasonable, so Abdoli's Claim Is Dismissed for Failure to State a Claim.

Defendants insist that judicial review of decisions made under the Proclamation's waiver program is not available under the APA because the Proclamation "is a Presidential action not

---

[3] The defendants' contention that Abdoli's claims are moot because his visa application was "denied," *see* Defs.' Mem. at 19, is built on the same error as their consular nonreviewability argument.  Abdoli's claim rests not on the denial of the visa under the Proclamation but on defendants' failure to finally adjudicate his eligibility for a waiver.  "An order from this Court requiring defendants to process [Abdoli's] waiver would affect the parties' rights, and thus, the case is not moot."  *Ghadami*, 2020 WL 1308376, at *5; *see also Didban*, 2020 WL 224517, at *4 (rejecting the same mootness argument); *Moghaddam*, 424 F. Supp. 3d at 113 (same).

subject to the requirements of the APA," Defs.' Reply at 9; *see also* Defs.' Mem. at 13, or by mandamus "given the absence of a nondiscretionary duty," Defs.' Mem. at 13. Although at least one recent decision rejected defendants' precise reviewability arguments, *see Moghaddam*, 424 F. Supp. 3d at 115–16, 118–21; *see also Thomas*, 2020 WL 601788, at *5–6, the questions of reviewability need not be resolved here because defendants' alternative argument — that Abdoli fails to state a claim on which relief can be granted — succeeds, *see Ghadami*, 2020 WL 1308376, at *7 (sidestepping similar questions of reviewability); *Bagherian*, 2020 WL 674778, at *5 (same); *Didban*, 2020 WL 224517, at *5 (assuming without deciding that "the Government's failure to issue a waiver decision is reviewable under the APA").[4]

Abdoli claims that adjudication of his waiver "ha[s] been unreasonably delayed." Compl. ¶ 35; *see also id.* ¶ 41. In determining whether a delay in agency action is unreasonable, the D.C. Circuit has enumerated six factors to be considered:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Research & Action Ctr. v. FCC* (*TRAC*), 750 F.2d 70, 80 (D.C. Cir. 1984) (internal quotation marks and citations omitted). The first factor is the most important. *See In re Core Commc'ns Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008).

---

[4] These questions of reviewability may be bypassed because they do not implicate Article III jurisdiction. *See Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) (holding that reviewability under the APA is not a jurisdictional question); *see also Ghadami*, 2020 WL 1308376, at *7 n.5 (noting this).

Plaintiffs argue that evaluation of the *TRAC* factors "is not appropriate at a motion to dismiss stage," Pls.' Opp'n at 6, because the factors are "fact-specific," *Moghaddam*, 424 F. Supp. 3d at 117 (concluding that "[u]ndergoing such a fact-specific inquiry at this stage would be premature"); *see also Thomas*, 2020 WL 601788, at *6 (same). Indeed, the D.C. Circuit has cautioned that "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). Nevertheless, in cases like this one involving claims of unreasonably delayed waiver determinations, the *TRAC* factors have been generally employed at the motion to dismiss stage to determine whether a plaintiff's "complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Ghadami*, 2020 WL 1308376, at *7 n.6; *see also Bagherian*, 2020 WL 674778, at *5 (considering the *TRAC* factors at the motion to dismiss stage); *Didban*, 2020 WL 224517, at *6 (same). *But see Moghaddam*, 424 F. Supp. 3d at 117; *Thomas*, 2020 WL 601788, at *6. As in those cases, this record contains enough facts to evaluate the *TRAC* factors now. Applying them shows that the complaint fails to state a claim that action on Abdoli's waiver application has been unreasonably delayed.

The first and second *TRAC* factors weigh in favor of defendants. "Congress has supplied no timeline for processing waiver applications," *Didban*, 2020 WL 224517, at *6, and, more generally, "has given the agencies wide discretion in the area of immigration processing," *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017) (observing that a two-year delay in processing an immigration visa "does not typically require judicial intervention"). Looking to "supply content for th[e] rule of reason," *TRAC*, 750 F.2d at 80, plaintiffs point to congressional testimony by the Deputy Assistant Secretary for the Bureau of Consular Affairs stating that

11

implementation of a new electronic vetting system in 2019 would enable consular officers "to make most waiver decisions within a few days of the visa interview." Pls.' Opp'n at 7 (quoting Compl., Ex. V, Testimony of Edward Ramotowski Before the H. Comm. on the Judiciary (Sept. 24, 2019) ("Congressional Testimony") at 3, ECF 1-1)); *see also* Compl. ¶¶ 33–34 (discussing this testimony).[5] Although this testimony suggests that Abdoli's two-year wait may be unusual, the testimony does not suggest that delays of longer than a few days are unreasonable. Indeed, the testimony explains that quick determinations will not be possible in some circumstances, including where "the security check done prior to the interview" reveals "concerns." Congressional Testimony at 3.

Absent a congressionally supplied yardstick, courts typically turn to case law as a guide. *See, e.g.*, *Skalka*, 246 F. Supp. 3d at 154 (collecting cases). No bright lines have been drawn in this context, but "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Yavari v. Pompeo*, No. 19-cv-02524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) (citing *Siwen Zhang v. Cissna*, No. 18-cv-9696, 2019 WL 3241187, at *5 (C.D. Cal. April 25, 2019)); *see also Skalka*, 246 F. Supp. 3d at 154 (concluding based on "comparable cases" that "a delay of [two years] does not typically require judicial intervention"). On this Court, delays of about two years in processing waivers — that is, delays which are comparable to the one endured by Abdoli — have been deemed reasonable as a matter of law, resulting in grant of the government-defendants' motions to dismiss. *See Ghadami*, 2020 WL 1308376, at *8 (granting motion to dismiss unreasonable delay claim based on a 25-month delay); *Bagherian*,

---

[5] This testimony may be relied on assessing the motion to dismiss because judicial notice may be taken of documents in the public record and because the testimony was "incorporated in the complaint," by reference and by "attach[ment] as an exhibit." *Trudeau*, 456 F.3d at 183 (considering documents attached to the complaint in deciding a motion to dismiss for failure to state a claim).

12

2020 WL 674778, at *5 (same); *Didban*, 2020 WL 224517 at *6 (granting motion to dismiss unreasonable delay claim based on a 24-month delay). In each of these cases, defendants justified the delays by arguing that two years is "a period of time that is far from extraordinary when considering the national security interests implicated and the volume of applications being processed." Defs.' Mem. at 14 (internal quotation marks omitted); *see, e.g.*, *Ghadami*, 2020 WL 1308376, at *8 (quoting the exact same language from defendants' motion); *Bagherian*, 2020 WL 674778, at *5 (same). While this national security argument must be acknowledged, *see Bagherian*, 2020 WL 674778, at *5; *see also Didban*, 2020 WL 224517 at *6 (calling the national security interests "significant"), the volume of waiver applications is "a problem . . . of the administration's own creation" that "could easily be alleviated by rolling back the blanket prohibitions contained in the Proclamation," *Ghadami*, 2020 WL 1308376, at *8. Even before the Proclamation, though, determinations about immigration visas frequently took many months or years, so no court has found a basis for deeming a delay of two years in processing a waiver unreasonable.

The third and fifth *TRAC* factors weigh in favor of plaintiffs, as defendants concede. *See* Defs.' Reply at 12. Plaintiffs' health and welfare are at stake, and the complaint outlines the harm plaintiffs are enduring because of the delay: four years ago, when Sarlak was offered the job at Simply Natural, Sarlak and Arshia moved to Turkey from Iran to begin the visa process, leaving Abdoli behind to earn money at his job as a geologist at the Geological Survey of Iran. *See* Compl. ¶¶ 26–27. The separation has been difficult on the family financially and emotionally, *see id.* ¶¶ 26–32, and especially on Sarlak, who "has had to receive psychiatric support" in Turkey, *id.* ¶ 32.

The fourth factor is whether expediting Abdoli's waiver would harm other agency activities of equal or greater priority. Defendants report that 14,000 applicants "are similarly awaiting national-security adjudication of their own waiver requests." Defs.' Mem. at 1. Granting Abdoli the relief he seeks would put him "at the head of the queue[,] simply mov[ing] all others back one space and produc[ing] no net gain." *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991). Such "reordering[s]" are inappropriate. *Id.* at 76; *see also, e.g.*, *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005) ("[W]here resource allocation is the source of the delay, courts have declined to expedite action because of the impact on competing priorities."). As a result, the fourth factor weighs in the government's favor. *See Ghadami,* 2020 WL 1308376, at *9 (finding that "expediting review in Ghadamy's case would merely direct government resources from the adjudication of other waiver applications"); *Bagherian*, 2020 WL 674778, at *6 (same); *Didban*, 2020 WL 224517, at *6 (finding that reordering waiver applications "would impermissibly interfere with the agency's 'unique' and 'authoritative [ ]' position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way'" (quoting *In re Barr Labs., Inc.*, 930 F.2d at 76)).

Finally, the sixth factor is neutral. Plaintiffs do not allege any bad faith, *see* Compl. ¶¶ 35, 42, but "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed," *TRAC*, 750 F.2d at 80.

Taking the factors as a whole, plaintiffs have not stated a claim under the APA for unreasonable delay. *See Ghadami,* 2020 WL 1308376, at *9 (reaching the same conclusion); *Bagherian*, 2020 WL 674778, at *6 (same); *Didban*, 2020 WL 224517, at *6 (same). The rule of reason found in the case law, plus the the fact that granting Abdoli relief would merely reorder his application, outweighs the real hardship this delay has caused plaintiffs. Plaintiffs' request

for mandamus must be rejected for the same reason. *See In re Core Commc'ns, Inc.*, 531 F.3d at 855 (stating that the standard for evaluating a mandamus petition and a claim of unreasonable delay are the same); *see also, e.g.*, *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016) (collecting cases "reject[ing] mandamus claims that would have had the effect of allowing the plaintiffs to jump the line, functionally solving their delay problem at the expense of other similarly situated applicants").

That said, the enormous backlog of thousands of waiver applications is troubling, especially in light of the Supreme Court's reliance on the availability of waivers in deeming the Proclamation constitutional. *See Trump v. Hawaii*, 138 S. Ct. 2392, 2422–23 (2018). This Court echoes others that have cautioned "the agency to devote the resources and put in place the apparatus needed to evaluate the many claims for waiver expeditiously to ensure that the waiver provision does not become an empty promise." *Ghadami*, 2020 WL 1308376, at *9.

## IV.    CONCLUSION

For the reasons given, defendants' motion to dismiss the claims related to Sarlak and Arshia as moot is granted. Defendants' motion to dismiss the claims related to Abdoli for failure to state a claim is also granted.

An Order consistent with this Memorandum Opinion will be filed contemporaneously.

Date: June 10, 2020

_____
BERYL A. HOWELL
Chief Judge